IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

J&K BODY SHOP, INC., ET AL.,            )
                                        )
                      Plaintiffs,       )
vs.                                     )        NO. CIV-11-0077-HE
                                        )
ZURICH AMERICAN INSURANCE CO.,          )
ET AL.,                                 )
                                        )
                      Defendants.       )

## ORDER

Plaintiffs J&K Body Shop, Inc. ("J&K") and Bryan Key sued defendants Zurich American Insurance Company ("Zurich") and Universal Underwriters Insurance Company ("Universal") alleging defendants breached an insurance policy and violated their duties of good faith and fair dealing.  Defendants have moved for summary judgment on both claims. The court concludes that no genuine issue of material fact exists and defendants are entitled to judgment as a matter of law.

## Background

The relevant facts are largely undisputed.[1]  On May 17, 2009, J&K's office was burglarized and certain items inside the office were stolen or damaged.  The burglars did not enter J&K's garage or shed. [Doc. #32-1, Deposition of Bryan Key, p.81].  At the time of the burglary, J&K carried an insurance policy with Universal.  Mr. Key, the owner of J&K,

---

[1] *Plaintiffs' three page summary judgment response makes no effort to respond directly to the specific facts asserted in defendants' brief, which facts may therefore be deemed admitted. LCvR 56.1(c).  Further, the bulk of the assertions in the response are supported with nothing more than conclusory statements that certain facts are true.*

purchased the policy for J&K and was listed as an "other insured" on it. [Doc. #32-4]. The policy provided coverage for the damaged or stolen property and for lost business income caused by the burglary. *See generally* Doc. Nos. 32-3, 32-5. On August 10, 2009, J&K filed a claim for loss or damage to several office chairs, one calculator, two cameras, one caller ID device, window blinds, and one computer. It also submitted a claim for damage to a light fixture, a front glass door, an internal door frame and hinges, two office doors, a shelf, the office carpeting, and a desk, and for the costs of having the office cleaned and repainted. [Doc. #32-7].

J&K reopened for business immediately following the burglary. [Def. Fact 16]. Mr. Key testified in his deposition that he spent three or four days seeking bids to have the office repainted, that the repainting process took most of a week, and it took several days to install carpet in the office. [Doc. #32-1, Deposition of Bryan Key, pp. 81-100]. He also indicated it took him several hours to compile the list of damaged and stolen items and that he spent between 16 and 24 hours contacting, or trying to contact, the insurance adjuster. Mr. Key states he spent at least three days shopping for and purchasing a computer, and a couple of days doing the same for the two cameras. J&K had other employees who did not deal with the claim directly and continued working during this time.

Universal paid plaintiffs $2,871.94 for damage to the building and $2,733.20 for damage to repair and replace the property damaged or stolen inside the office. [Doc. #32-18]. Plaintiffs do not object to defendants' handling of the property damage claim. The present dispute involves only J&K's lost business profits.

The insurance policy contained a business recovery expense endorsement which obligated Universal to pay "the extra expenses and reduction of business income" J&K incurred as a result of the burglary.  [Doc. #32-3].  The policy stated that Universal would pay those expenses "for as long as it reasonably takes to restore the damaged or destroyed building or contents, and to resume operations with the same quality of service which existed immediately before [the burglary], regardless of the expiration date of this policy."  This endorsement was applicable only to the named insured—J&K. [Doc. #32-4].

Some time prior to September 25, 2009, J&K submitted its claim for lost income.  [Doc. #32-9].  Universal maintains it did not receive all necessary financial statements to support this claim, however, until August 31, 2010. [Doc. #32-16].  Defendants' submissions establish that multiple requests were made to plaintiffs over the next several months for further financial information.  Plaintiffs' submissions do not dispute that those requests were made, but indicate plaintiffs were required to submit some responsive information more than once.  [Doc. #33-1].  Universal offered J&K $2,231 on its lost business income claim on October 20, 2010.  [Doc. #32-17].  After plaintiffs objected to that amount, on December 1, 2010, J&K doubled the amount to $4,462 and sent a check to J&K, which was refused. [Doc. #32-18].

Plaintiffs filed suit in state court against Zurich on December 8, 2010.  Defendant timely removed the action to this court. [Doc. Nos. 1, 1-1].  Plaintiffs then filed an amended complaint adding Universal as a defendant.  [Doc. #18].  Defendants now seek summary judgment, arguing that Zurich cannot be liable to plaintiffs because it was not a party to the

3

contract, that Mr. Key cannot recover individually because he was not covered by the endorsement at issue, and that plaintiffs have otherwise failed to produce sufficient evidence in support of their claims.  [Doc. #32].

## Summary Judgment Standard

Summary judgment is appropriate only when the moving party demonstrates that no genuine dispute of material fact exists and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party who bears the burden of proof at trial on a claim or defense must be able to point to sufficient evidence to support each essential element of the claim or defense in order to avoid summary judgment.  Bruner v. Baker, 506 F.3d 1021, 1025 (10th Cir. 2007); Fed. R. Civ. P. 56(c)(1)(B).  All inferences from the evidence are to be viewed in the light most favorable to the non-moving party.  Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1169-70 (10th Cir. 2010).  Applying this standard to the present case, the court concludes plaintiffs have not presented evidence sufficient to create a triable issue of fact and that summary judgment in defendants' favor is appropriate.

## Discussion

Plaintiffs assert two claims against the defendants. They assert defendants breached the insurance contract by refusing to pay the amounts plaintiffs claim as lost income for the period from May through October of 2009.  They also assert that defendants' handling of the claim breached their duty of good faith and fair dealing.  The obligation to deal fairly and in good faith arises out of the insurance contract, but is the basis for a separate cause of action sounding in tort.  See Christian v. American home Assur. Co., 577 P.2d 899, 904 (Okla.

4

1977).

## A. Breach of Contract

In order to avoid summary judgment on the breach of contract claims in the circumstances existing here, plaintiffs must produce evidence sufficient to create a justiciable issue of fact as to the elements of a breach of contract claim—that they entered into an insurance policy with the defendants, that defendants failed to perform under the policy, and that plaintiffs suffered injury as a result.  *See* Digital Design Group, Inc. v. Info. Builders, Inc., 24 P.3d 834, 843 (Okla. 2001) (setting out the elements for a breach of contract claim).

The contract claim against Zurich is readily resolved by noting it was not a party to the insurance contract.  It is undisputed that the policy involved here was issued only by Universal and that Zurich was not a party to it. [Def. Fact 8.]  Plaintiff states that Universal is a subsidiary of Zurich, but that is of no moment unless there is some basis shown for ignoring the separate corporate entities.  *See* Okla. Oncology & Hematology P.C. v. US Oncology, Inc., 160 P.3d 936, 945 & nn.17-18 (Okla. 2007) (absent extraordinary circumstances, a parent corporation and its wholly-owned subsidiary are separate legal entities and the parent neither enjoys the rights nor incurs the obligations of the subsidiary). Plaintiff has not attempted such a showing.  Summary judgment will therefore be entered in Zurich's favor as to the purported contract claim.

Similarly, it is clear the contract claim at issue here—based on the alleged failure to

reimburse for lost business income—does not extend to Mr. Key.[2]  While Mr. Key was named as an additional insured on the policy, it is undisputed that the business income coverage extended only to the named insured—J&K.  [Def. Fact 7; Doc. #32-4].  Summary judgment must therefore be entered in defendants' favor as to any contract claim by Mr. Key.

The remaining issue concerning the contract claim is whether plaintiff has proffered evidence sufficient to create a justiciable question as to whether Universal breached the insurance policy by refusing to pay amounts properly due to plaintiffs as lost business income.  Plaintiffs assert J&K experienced losses in excess of $120,000 due to the burglary, pointing to a claimed reduction in income for the period from May through October of 2009.  They rely on a letter from their accountant describing a year-to-year reduction in gross income figures for the indicated six month period.

Even evaluating all evidentiary submissions in the light most favorable to plaintiffs, they have not produced evidence to show that Universal breached the agreement.  Universal tendered $4,462 to J&K and the proffered evidence does not support an inference that J&K was entitled to more than that.  The business recovery expense endorsement obligated Universal to pay the extra expenses and reduction in business income J&K incurred due to the burglary.  However, it was required to pay those expenses only for the time it should reasonably have taken J&K to resume normal operations.  Plaintiffs' assertion that it took

---

[2]*The body of both the original petition and the amended complaint refer only to Mr. Key as the plaintiff.  The court assumes, as J&K and Mr. Key are both listed in the caption of the case, that both are intended to be plaintiffs.*

6

J&K six months to resume normal business operations is not supported by the evidence.

The $2,231 originally offered by Universal was based on J&K's total sales for May, 2009—the month of the burglary.  *See* Def. Fact 16.  It calculated J&K's average daily sales by assuming that all its May sales were generated before the burglary and then used that average to calculate estimated lost income for the remaining eleven days of the month. Because J&K was open for business and in fact had sales in May after the burglary, that calculation plainly overstated the daily loss to J&K.  Further, the calculation was based on gross profit (i.e. gross sales less cost of goods sold) rather than net profit, the standard under the policy provision,[3] and therefore overstated the loss on that basis.  For those reasons, defendant reduced the calculation by half to reach the $2,231 figure.  Plaintiff offers no evidence or argument which undercuts defendant calculation of the daily loss or the loss figure based on that.  Moreover, defendant's doubling of the amount to $4,432 eliminates any conceivable question as to accuracy of the loss calculation unless some basis is shown for concluding J&K was entitled to be paid for more than the liberally calculated losses estimated for roughly two weeks of operation.

The only evidence relating to the adequacy of the lost business income payment to which plaintiffs' response points is a letter from plaintiffs' accountant.  That letter stated that J&K's gross income between May and October of 2009 was $121,360.79 less than its gross

---

[3]*[Def. Fact 5].  Plaintiffs' response suggests that Mr. Key's understanding of the contract with Universal Underwriters Insurance was that it involved gross rather than net amounts.  That assertion in plaintiffs' response is not supported by any evidence and is, in any event, contrary to the plain language of the policy.  See Doc. #32-3.*

income during the same period in 2008.  However, the letter makes no effort to address J&K's <u>net</u> income during the period, which is the pertinent inquiry under the policy coverage.  Further, the letter offers no support for plaintiffs' assertion that the reduction during this six month period was attributable to the burglary.[4]  Plaintiffs' submissions are insufficient to show a justiciable question as to the contract claim.[5]

## B. Duty of Good Faith and Fair Dealing

An insurer can be held liable for violating its duty of good faith and fair dealing when there is a "clear showing" the insurer unreasonably withheld payment for a covered claim. <u>Christian</u>, 577 P.2d at 905.  An insurer does not act unreasonably by denying a claim if there is a legitimate dispute over coverage.  *See id.* at 904-05.

As discussed above, Zurich was not a party to the insurance policy between plaintiffs and Universal.  Therefore, it could not have unreasonably failed to pay a claim because it was not plaintiffs' insurer.  Additionally, because plaintiffs have not established J&K was entitled to any more than the $4,462 Universal tendered, Universal did not act unreasonably in denying plaintiffs' claim for over $120,000 in lost business profits.  At the very least there was a legitimate dispute over the amount of plaintiffs' claim.  The only other evidence to

---

[4]*Plaintiffs' response adds the following: "A decrease is a decrease, and an increase is an increase.  There is nothing to opine about numbers.  Numbers are factual."  This explanation does not fill the evidentiary gap.*

[5]*While the court is under no obligation to construct a response brief for the defendant, it has reviewed the deposition of Mr. Keys attached to defendants' submissions.  That testimony does not plausibly support an inference that it took more than the equivalent of two entire weeks to restore J&K's operations.*

which plaintiffs' response points is a letter from plaintiffs' former counsel dated August 4, 2010, requesting prompt processing of the claim and asserting that Mr. Key's CPA had submitted financial information a month before which defendant was still requesting.  The letter is not sufficient to create a justiciable question of bad faith, even if the multiple levels of hearsay are overlooked.[6]  Summary judgment must therefore be entered in defendants' favor as to the claims alleging breach of the duty of good faith and fair dealing.

### Conclusion

As plaintiffs have failed to produce evidence sufficient to create a justiciable issue as to either their breach of contract or bad faith claims, defendants' motion for summary judgment [Doc. #32] is **GRANTED** as to all claims.

**IT IS SO ORDERED**.

Dated this 20th day of October, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[6]*The letter is the lawyer's statement of what Mr. Key told him about what Mr. Key's accountant did or said he did.*